The second case for argument is United States v. Shaquiel Mendez All right, good morning. Mr. Juraczyk, we'll hear from you first. Good morning. May it please the Court, as you indicated, my name is Sam Juraczyk. I'm here on behalf of Mr. Shaquiel Mendez. This case is about statutory limits. It's not about limitations that have been put out by this Court when it comes to federal witness tampering. And the government got a conviction here with no evidence that anyone here, any one of these alleged co-conspirators contemplated a particular federal proceeding. And there was no evidence that the assault could have hindered any future communication from Mr. Brooks' part. The government's case here essentially collapses under its own evidence because they're first the no contemplation of official proceedings. Under Arthur Anderson, Patruch, and Richardson, there needs to be this contemplation of federal official proceedings, right? And here, every single piece of evidence that was introduced by the government was state. It was state discovery that was shown from a, and it was given over from an assistant state's attorney, and it was sent to the, Mr. Burnett, who was the alleged murderer of the person that this kind of underlines to, by his state public defender. And then the government also relies on this protective order that was, that has something to do with their proof that this had federal contemplation. But again, that protective order is referencing, it's signed by a state judge under the state way, shape, or form that these individuals could have contemplated a particular foreseeable federal proceeding. Didn't one of them, and maybe your client, say something about the feds or they didn't think the feds gave out paperwork or something like that? So there is some testimony there that, and there's, I think you need to put it in context because if we look at the underlying transcript, I purposely played the video of Mr. Brooks, the victim, stating how my client, Mr. Mendez, said that. There is a ride to district, state district court in a van where all three of them are in. And they come back from there and it's after that ride, right after that ride in the van where Mr. Mendez allegedly says to Brooks, I'm surprised that Burnett was talking to you because when I was previously housed with Burnett, he told me that you're talking on him to the feds. Yet, what was presented to the jury, Mr. Mendez was never housed with Burnett until shortly, a few days before the assault. So there is no possible physical way that Mr. Mendez could have even had that conversation with Mr. Burnett. He wouldn't even have known what they were facing with at that point. And also, in that interview with Mr. Brooks, he admits nobody had discovery yet. So again, there would be no way, even if there is some allusion to federal interest in that discovery, which there was not. Even if there is, then there is no possible way that they could have even known that at that point because nobody had discovery because Mr. Brooks admits that. Under the Richardson case, an allusion to, quote, the feds is enough, right? It is, but if that's possible. And here, that's the thing. It's not possible for that conversation to have even happened. We're on the official proceeding. Is that the charge we're talking about now? Are we talking about the hindered delay prevent? You have two statutes. I guess they're kind of intertwined. I guess I was responding to Judge Kelly's question. No, no, no, no. My question is really about the first one. Is that plain error on the official proceeding? No, I argue that it's de novo because, and I understand where the government's argument there was that I didn't raise that. I would direct the court's attention to my Rule 29 motion, which is outlined on the transcript from page 458. Well, it looks like it's about testifying. The very first portion of it, and I quote, no evidence presented regarding the intent on Mr. Mendez's part to influence delay prevent Mr. Brooks from testifying in front of a grand jury or trial. So if we look at the first piece, the official proceeding piece, that's exactly what I'm saying. I may not have used the language official proceeding, but that is exactly what I'm saying. It's the second part. What about the rest of it? The rest of it is part two. The rest of it sounds like it's quoting the statute, the second statute, I'm going to call it to do this quickly. That's correct, because I am referencing both pieces of it, because even though the government charged this out in the conjunctive, either or, it's instructed to the jury as disjunctive. So it's, I'm sorry, it's charged out as conjunctive. They both have to be there. It's instructed the jury as disjunctive, so it's either or. It would have made no sense for me to argue one and not the other for Rule 29. If I shut down one, I still don't shut down the case. So I was arguing both. That was the intent, and that's how I, again, I may not have used the official language, official proceeding, but I specifically outlined grand jury or a trial. I guess this is not an issue on appeal, but you didn't object to putting both of those offenses in the same count? No, I didn't. They were charged out, again, they were charged out in the conjunctive, but the jury hears them in the disjunctive. So it's all under one as far as I was concerned. I guess that kind of goes back to my answer to Judge Benton's question as to why I would make a Rule 29 motion under the one charge if they're disjunctive of each other. At this point, I'd like to... I'll be very quick. It's really what Mendez thought at the time, right? His intent, his knowledge at the time. Is that the way the statute reads? I think it kind of falls between, and I think I've heard this Court's questioning on this, it kind of falls between knowing and, because this contemplate, particularly for proceeding, where does contemplate fall into knowledge, and we don't really have a definitive definition on that. Thank you. Thank you. Reserve the remaining time for rebuttal. Thank you. Very well. Mr. Kopp, we'll hear from you. You may proceed. Morning, and may it please the Court. Matt Kopp for the United States. Every member in this witness tampering conspiracy, Shakil Mendez, excuse me, Shakil Mendez, chief among them, knew about an active federal investigation targeting Jesse Burnett. That knowledge led directly to the jailhouse assault of Josh Brooks, who was the key witness in what became a federal murder and drug trafficking case against Burnett. We have two very narrow sufficiency of the evidence questions this morning, one on each of the two charged witness tampering theories in the indictment. And they both give the same basic question, which is whether this case was properly charged in federal court or if it should have been charged in state court. First question is whether Mendez contemplated a particular foreseeable federal proceeding at the time this assault happened. Second question is whether Josh Brooks was reasonably likely to again communicate with federal law enforcement in a world where this assault had never happened. We had a general verdict at trial, and that means that if the answer to either of those questions is yes, and the answer to both of them is yes, then this judgment should be affirmed. First issue deals with 15 — Are these two separate crimes? Well, they're not, Your Honor. And I would analogize this to charging a drug trafficking conspiracy where you charge a conspiracy to possess with intent to distribute and distribute a controlled substance. Those are technically two separate crimes. They're separate violations of a federal statute, but they can be charged as part of the same conspiracy. Same thing with money laundering. It's frequent to charge two separate subsections of the money laundering statute within a conspiracy count there. So we would argue that it is not — But wouldn't the jury then typically be instructed that it must find unanimously as to one or the other? Yes, and that happened here, Your Honor. So on the final jury instructions, pages 11 and 12, there is a unanimity instruction talking about the two separate theories and that the jury would have to find unanimously which one in order to find a guilt. And then there was a general verdict form as well. Did it specify that it found one or the other or both? Yes, it did. On the verdict form? No, it did not specify on the verdict form. It was a general verdict form just asking for a guilty or not guilty verdict on the single count. I see. Okay. So essentially, the jury was instructed —  Thank you, Your Honor. So the first issue is on section 1512A2A. This was not argued in the Rule 29 motion. There was no specific reference to the contemplation of a particular foreseeable proceeding. What about — you heard the other side. What about the in front of a grand jury or at a trial phrase that's at the beginning of the oral objection? Well, the argument there was directed more at the lack of hindrance of the communication. So there was a reference to simply repeating the language in the indictment, basically, that had to have been in front of a grand jury or trial. But the argument itself was directed very much at the hindrance part of it and not at the contemplation of a foreseeable proceeding. The district court clearly didn't interpret it that way and didn't have an opportunity to pass on it. So this should be plain error. That means there has to be no evidence of guilt at all or such evidence on this element that a conviction would be shocking. Wait, wait, wait. You say the district court didn't interpret it that way and, therefore, it's plain error of you. But, well, I don't know that the preservation really turns on how the district court interpreted it as to — but on whether it was adequately argued. The district court might have misconstrued or missed the objection. I agree, Your Honor. But it was not raised in a way that was sufficient to put the district court in a position to say, well, you know, the statute that you're referring to says, influence, delay, or prevent the testimony of any person in an official proceeding. And he says there's not enough evidence of influence, delay, prevent Brooks from testifying in front of a grand jury or at a trial. Fair enough, Your Honor. Doesn't that track the — It tracks the language in the indictment. There was no specific argument directed at the official proceeding. Okay. I grant you that he doesn't go on and then say there's no evidence of knowledge of an official proceeding. That's correct. Is that your point? Okay. That's the point, yes. And regardless of what the standard of review is here, there's certainly sufficient evidence. And this can be resolved on a straightforward application of this Court's three previous cases addressing witness hampering by defendants in state custody under these Federal statutes. You have Abdullahi and Petrick over here, which involve defendants in state custody attempting to influence witnesses for specific proceedings in state court with no knowledge of Federal investigations into their conduct. And then over here, you have Richardson, where even though the defendant didn't know about a Federal investigation into his conduct, he was still talking about the possibility that his state gun case at the time would be charged federally. So if the line for sufficiency, then, is somewhere between Abdullahi and Petrick over here and Richardson over here, then we are well past that and even beyond Richardson. For one thing, there's no evidence in this case that this tampering was directed at specific state court proceedings. Nothing in the record suggests that Brooks was going to be a witness in an upcoming hearing or trial against Jesse Burnett. And in fact, what we see is the opposite, that Jesse Burnett knows that there's a Federal investigation into him. This discovery is shared. Shaquille Mendez confronts him about informing the FBI. And then from there, this case proceeds to an assault relatively quickly. And so it's the aspect of this that really triggers the assault rather than some specific state proceeding. The materials were from state discovery, though, correct? That is correct, Your Honor. The discovery that was seized and all the discovery that was with Jesse Burnett were from state materials. This case was charged in state court at the time. And it was all pending in state court? It was all pending in state court, yes. There is certainly testimony to support the notion that Jesse Burnett was aware that there was a Federal investigation going on. He tells Josh Brooks directly, while they're sitting together, the Feds are looking at me. And then as well, there's an ATF agent who testified that his name and agency would have been in Burnett's discovery fairly regularly before that. There was only a limited amount of discovery that was seized from Jesse Burnett's jail cell. There had been... I'm sorry, you're saying that the Federal agents said that their names as Federal agents were in the state discovery? That's correct. There were multiple joint interviews that were done where Federal agents and prosecutors were present for those interviews. They would have appeared in that discovery. And so there were several hundred other pages that had been disclosed previously. Very likely that would have been in there, so Jesse Burnett would have been aware. And what was the evidence again that relating to the FBI? Yeah, so that's the video of the prior interview that was played by the defense. And Endez... Prior interview of whom by whom? Prior interview of Josh Brooks by Federal agents right after this assault happens. So Brooks is being interviewed and he describes how Endez confronted him after a court appearance and said, I heard you have been snitching to the FBI and he names a Federal prosecutor by name about all the guns that he's purchased and that you've been talking about this murder. And then right as this assault is about to happen, Josh Brooks has a piece of this state discovery with a picture of his face drawn on it and a raft and a piece of cheese and he's about to get stabbed in the neck. And right before that happens, Shaquille Endez says to him, I thought the Feds didn't give out paperwork. And so whatever his understanding was of where this case was at procedurally or anything like that, he knows that there's Federal involvement. That reference there certainly shows knowledge and contemplation of some kind of a Federal proceeding that's coming. And this all shows exactly what the Court found wanting in Adelahi, which is the contemplation of something more than just what's happening in state court at the time. And in fact, Adelahi went a little bit further and said, government does not have to prove that a defendant has subjective knowledge of a Federal investigation into them for this element to be met. That would be above and beyond the requirement to meet this contemplation element. Well, that's what we proved here. We proved that each one of these conspirators had knowledge of a Federal investigation into this person before this assault happened. That's sufficient evidence on the first issue. I will touch briefly on the second issue as well. That one, there's just a little bit of quirkiness to it. It's a little bit of a different standard than what we would normally see in a criminal case. That is a reasonable likelihood of Brooks communicating again with a Federal agent or prosecutor if the assault had never happened. And that's under 1512a2c. And it's a little bit different than some of the other cases on this issue too. A lot of them involve witness murders. And so there's almost an assumption that the witness would communicate again at some point. And it's really, the focus is on, is that communication going to be Federal or not Federal? I don't think here there's really any dispute that if Josh Brooks had talked again in this hypothetical world, that that would have gone to a Federal agent or prosecutor. This was a joint Federal-State investigation from the start. That testimony was very consistent throughout trial. But really what it seemed like they were trying to do is just punish him for having spoken in the first instance. Well, that can be part of it, right? That can be part of the motive, but the motive can also be to prevent future cooperation. And both Ahmed Hassan and Daniel Sissy testified that part of the reason for this was to stop him from continuing to cooperate in the future. And that's kind of the obvious consequence of what this is intended to do. When you draw a picture of somebody and give it to him and stab him and beat him up, that is certainly a message to not cooperate again in the future. And punishment in itself suggests an intent to correct action in the future. So it can't just be a, we're retaliating against you for cooperating in the future, please go on your way and continue talking to the FBI and a Federal prosecutor about this. That just does not square with the evidence in this case. We would ask the Court to affirm the judgment here. Thank you. Very well. Thank you for your argument. We'll hear brief rebuttal. I want to specifically start out with the Mr. Mendez allegedly saying, I thought the feds didn't give that out. The only person that comes from is Ahmed Hassan, who when we watched the video wasn't anywhere near where Daniel Sissy and Brooks were standing. If we look at Mr. Brooks' actual testimony at trial, he never says that. He says that, and I quote on page 133, that Daniel Sissy says, we heard you've been talking to the detectives, specifically uses the word detectives. And when asked about what Shaq says, Mr. Mendez, yeah bro, that's what Jesse Burnett gave me, you Josh Brooks. You could look under the kiosk, you could see his name is Josh Brooks. He never says anything about the feds. And that's coming directly from the victim, that there was never reference to the feds by Mr. Mendez. What about the interview that Brooks gave, described? And again, that's when we look at the timeline of things, it's impossible for that to have happened. Because he's talking about that conversation happening right after a van ride when no discovery was given out. Nobody knew what was actually going on. The only time Mr. Mendez was ever housed with Mr. Burnett was approximately 20 hours before this alleged conspiracy starts. So that conversation just didn't happen. And when Hassan testifies to the, I thought the feds didn't give out documents, Mr. Brooks himself never says that, he never says that. And the government comments here that everybody knew about a federal investigation, and I asked the court to go back through the record and look what was introduced as evidence. It's all state. There's no reference. They go into great detail about this federal investigation, but they never link that to any particular foreseeability by the defendants in this case. And for these reasons, we're asking this court to vacate the criminal judgment, or any alternative, reverse the conviction and set for a new trial. Very well. Thank you for your argument. Thank you to both counsel. The case is submitted. The court will file a decision in due course. Counsel are excused.